## YELLOW CAB COMPANY, INC. v. HARRY BECKER.[1]

### February 13, 1920.

### No. 21,622.

**Trade-name — imitation of color of vehicle will be enjoined pendente lite.**
  A simulation by defendant of plaintiff's taxicabs, used in a public taxicab business, will be enjoined pendente lite, where the imitation is obviously calculated to deceive the public into the belief that the defendant's taxicabs and service are those of the plaintiff, and thereby injure and interfere with its business.

·Action in the district court for Hennepin county to restrain defendant from using taxicabs similar to plaintiff's in color or finish and for an accounting. From an order, Bardwell, J., granting plaintiff a temporary injunction, defendant appealed. Affirmed.

*Nathan Rivkin* and *Rose & Brill,* for appellant.
*J. H. Sapiro, George T. Simpson* and *John F. Dahl,* for respondent.

QUINN, J.
Both parties to this controversy are engaged in the taxicab business in the city of Minneapolis, this state. Plaintiff asserts in·the complaint that, prior to its organization in 1918·under the laws of ·Arizona, the Yellow Cab Company, a Minnesota corporation, installed, owned and operated a large number of taxicabs of a high grade for hire; that it adopted and used, in connection with such service, a reasonable and low meter schedule of fares; that it placed and maintained a large number of taxi-

[1]Reported in 176 N. W. 345.

cabs in operation at all public places in that city; that, by reason of the superior grade and quality of such service, the reasonable and uniform fares charged and the prompt and efficient service rendered, it established a wide reputation for cheap, safe and prompt taxicab service; that, in order to distinguish its taxicabs and the service thereof from other public taxicabs and service, and to preserve and protect the good will of such business said company adopted, used and employed in and for such taxicab service, the corporate title "Yellow Cab Company," together with a style and color for its taxicabs consisting chiefly of the body and wheels being painted yellow with black trimmings, the top, hood and fenders black, with a monogram of a circular form appearing on the doors, in the center of which is a blue background, triangular in form, with the words "Yellow Cab Company," appearing thereon; that the style, color and trade-name were all originated and first employed in connection with the taxicab business in the city of Minneapolis by said company; that prior to the commencement of this action plaintiff purchased and became the owner of all the property, trade-name and reputation of said Yellow Cab Company, including its taxicab service, business and good-will, and has since continuously conducted and pursued such business.

The bodies of defendant's taxicabs are in the same yellow color as those of plaintiff, the top, wheels, hood and fenders are black, and on the doors appears a monogram circular in form, with a dark background with the name "Independent Star" thereon.

Colored cuts of the taxicabs used by both of the parties are in evidence. It is apparent therefrom that, in color and general appearance, they are so similar, when viewed from a short distance, as to give out the impression of belonging to one and the same class.

Plaintiff alleges that, in July, 1919, defendant, with the fraudulent purpose of interfering with plaintiff's business, adopted and employed, and has since continued to use and operate, a number of taxicabs and automobiles for hire in opposition to plaintiff's business in the city of Minneapolis, which, in color, finish, design and general appearance, are identical with the yellow cabs used by plaintiff, thereby simulating its trade-name, deceiving the public and interfering with plaintiff's business.

In his answer defendant denies the allegations of fraud and diversion of business contained in the complaint, but admits that plaintiff uses

yellow cabs in its business and that it advertises as the "Yellow Cab Company." He also alleges that numerous persons and firms in the larger cities throughout the country have, for several years past, used automobiles in such business which were painted yellow, because such color is bold, attractive and can be seen at a greater distance; that, by reason of such use of yellow cabs for hire in the large cities, the traveling public has learned to recognize yellow colored cabs as being for hire, and while traveling from city to city persons seeking a cab for hire look for those painted yellow; that a very extensive part of the taxicab patronage in the city of Minneapolis comes from the traveling public, and that because of such facts he decided to paint the bodies of his cabs yellow and that it is his intention to continue so to do.

After hearing upon an order to show cause the trial court issued an order for a temporary injunction, commanding the defendant to refrain during the pendency of this action, or until the further order of the court, first, from using the trade-mark device of plaintiff or any imitation or simulation thereof; second, from using upon automobiles operated by defendant for hire, the finish, design, color, appearance, style or dress of plaintiff's taxicabs or any imitation or simulation thereof; and third, from using any scheme, plan, device, pretense, shift or contrivance of any kind or nature, causing or tending to cause defendant's taxicabs to be mistaken or substituted for plaintiff's taxicabs or taxicab service. From this order defendant appeals.

The order appealed from, in form, is much broader than the case seems to require. But when considered as simply preventing defendant from using taxicabs painted similarly to those of the plaintiff, and in such manner as will amount to a fraudulent imitation and be likely to deceive patrons into the belief that his taxicabs and taxicab service are in fact the same as those of the plaintiff, it loses much of its apparent harshness. With this view in mind the case becomes one of unfair competition in business by means of a simulated style of vehicle. It is well settled that a close imitation of one's trade-name or means and style of transacting business, which is obviously calculated to deceive the public into a belief that the imitation is, in fact, the original, is a fraud, and, where it appears that damages will result from such imitation, relief will be afforded by injunction. Opperman v. Waterman, 94 Wis. 583, 69 N. W. 569;

Cleveland Stone Co. v. Wallace, 52 Fed. 431; McLean v. Fleming, 96 U. S. 245, 24 L. ed. 828.

The true doctrine in cases of this character seems to be as stated in the case of Amoskeag Mnfg. Co. v. Spear, 2 Sandf. 599, 607. "It is evident, however, that in order to convey a false impression to the mind of the public as to the true origin or manufacture of goods, it is not necessary that the imitation of an original trade-mark shall be exact or perfect. It may be limited and partial. It may embrace variations that a comparison with the original would instantly disclose, yet a resemblance may still exist that was designed to mislead the public, and the effect intended may have been produced; nor can it be doubted that whenever this design is apparent, and this effect has followed, an injunction may rightfully be issued   *   *   *." Whether it was the defendant's design to induce the public to believe that his cab was the property of the plaintiff, and that the device and color which he had adopted with reference thereto were for the purpose of misleading the public, is a question of fact to be determined upon the trial. By this we do not mean to even intimate that the plaintiff is entitled to any exclusive property in color or in words, but under the showing made it became clearly a question for the court to determine whether the plaintiff is entitled to protection against imitations designed to mislead the public and to deprive the plaintiff of its profits. New York Cab Co. v. Mooney, 15 Abbott's New Cas. 152, 159; Yellow Cab Co. v. Cook's T. & T. Co. 142 Minn. 120, 171 N. W. 269.

It follows that the issuance of a temporary injunction pendente lite was clearly within the discretion of the trial court.

Affirmed.