YELLOW CAB COMPANY v. J. H. CREASMAN.

(Filed 8 June, 1923.)

1. **Trademarks—Trade Names—Devices—Competition—Unfair Competition.**

A manufacturer, dealer, or proprietor of a business may adopt and use a name, symbol, or device to designate and identify his wares or business, and when by his care, diligence, and the qualities of his goods or service he has acquired and established a patronage and good will of substantial value, it will be protected from unfair competition on the part of a rival who adopts for his own business, etc., a sign or symbol in such apparent imitation as will mislead the customers of the former and the public as to the identity of the goods sold or service rendered.

2. **Same—Malicious Purpose.**

Where one has acquired a substantial right by the conduct of his business under a certain device which has become known to his patrons and relied upon by them to identify and use the service or business he has thereunder established, it is not necessary for the protection of his right that his rival has a malicious purpose to injure him in adopting a same or similar device, though unfairness and fraud is the basis of the maintenance of his right, the presumption being that his rival intended to abide by the probable and natural result of his own deliberate act.

3. **Injunction.**

Where the main purpose of an action is to obtain a permanent injunction, and the evidence raises a serious question as to the existence of facts which make for plaintiff's rights, and are sufficient to establish it, a preliminary restraining order should be continued to the hearing.

4. **Same—Automobiles—Color—Public Service.**

In plaintiff's action to permanently enjoin the defendant from the use of a device that the plaintiff had adopted for its automobile service furnished to the inhabitants of a city, there was evidence in plaintiff's behalf, upon the hearing, tending to show that the color design for the plaintiff's automobiles was a yellow body with distinctive markings in black that had theretofore not been used in the city, which became well known to the public which patronized the plaintiff's line because of its fair dealings

and business methods, and that the methods of its competitors were discriminatory and unfair; that defendant, who had for a long while been running public-service automobiles of a grey color, put into its service two automobiles similar in design to the plaintiff's cars, and of such similar color and markings that the users of the plaintiff's cars were misled, the difference in their appearance being scarcely discernible by ordinary observation. There was evidence in behalf of defendant that yellow was commonly used for automobiles of this character, and was more durable, and that he had no improper designs upon plaintiff's business: *Held,* a serious question was raised as to the defendant's wrongful interference with the plaintiff's rights, and upon its giving a proper bond, the preliminary restraining order should be continued to the hearing upon the issues.

CIVIL ACTION, heard on motion to dissolve a preliminary order before *Bryson, J.,* at March Term, 1923, of the Superior Court of Buncombe County. The action and the temporary order heretofore issued in furtherance of same is to restrain defendant from using on the streets of Asheville for public hire any automobile or taxicab painted yellow and made to resemble or imitate in form and color the taxicabs now and heretofore in use by the plaintiff, the Yellow Cab Company, etc. On the hearing there was judgment dissolving the preliminary order, and plaintiff excepted and appealed.

*Harkins & Van Winkle and Guy Weaver for plaintiff.*
*F. A. Sondley and Mark W. Brown for defendant.*

HOKE, J. At the hearing there were facts submitted on part of plaintiff tending to show:

That prior to summer, 1922, the public-service automobile business in the city of Asheville was in an unsatisfactory condition from lack of uniform rates, overcharges, and other discriminations, which was a source of considerable trouble to the police department of the city of Asheville, and concern to the public interests.

That with a view of remedying this condition the Chamber of Commerce, through its secretary, N. Buckner, in conjunction with the owners of the Asheville Daily Citizen, invited the Yellow Cab Manufacturing Company, of Chicago, Illinois, to send representatives to Asheville for the purpose, if found expedient, of arranging with some local person to place the Yellow Cab Taxi Service upon the streets of the city of Asheville.

That representatives of the Yellow Cab Manufacturing Company visited Asheville in response to this invitation, and, at the instance of the secretary of the Chamber of Commerce, called upon the defendant J. H. Creasman and endeavored to induce the said Creasman to inaugurate the Yellow Cab Taxi Service in the city, but the said Creasman declined to do so.

CAB CO. *v.* CREASMAN.

That thereupon the said representative called upon H. C. Allen, who was then in the transfer business in the city, who at once organized the plaintiff Yellow Cab Company, made up of local stockholders, and inaugurated in the city of Asheville, Yellow Cab Taxi Service, buying eleven metered cabs of the peculiar and distinctive type of cabs manufactured by the said Yellow Cab Manufacturing Company, of the yellow or orange color combined with black.

That prior to the time plaintiff's taxicabs were put upon the streets of Asheville no person had ever operated a cab of like design or color, or combination of colors, and no public-service automobile of such color, or combination of colors, had ever been operated in the city, and no cab carrying a meter showing the mileage traversed and fare charged had ever been used in said city.

That the plaintiff company began an extensive advertising compaign, and by furnishing to the public prompt, efficient, and courteous service at uniform and comparatively low rates, very soon built up in the said city of Asheville a large and satisfied patronage, and acquired a very valuable good-will.

That the distinctive taxicab service which the plaintiff gave to the public, and its business, came to be identified and symbolized by the peculiar and distinctive color, or combination of colors, style, dress, and general visual appearance of its yellow taxicabs.

That the defendant Creasman had been engaged in the public automobile service in the city of Asheville for some ten or twelve years prior to the institution of this action, and had identified his service by the use of automobiles most of which were painted a greyish or blackish color; that he had never up to the time of the acts complained of operated any public service cabs of black and yellow color, nor had any other person used in the public service business in the city of Asheville any automobiles of a yellow color or combination of yellow and black, prior to the inauguration of the Yellow Cab Taxi Service by the plaintiff in this case.

That some time about the middle of November, 1922, after the plaintiff had built up a good patronage, and had established a good-will, and its business had come to be identified, generally recognized and symbolized by the peculiar color or combination of colors of yellow and black or orange and black of its cabs, the defendant Creasman put upon the streets of the city of Asheville two taxicabs of practically the same structural design, form, and appearance as the cabs of the plaintiff, and colored in almost exactly the same shade of yellow as those of the plaintiff; that the bodies of the plaintiff's cabs were painted yellow, with the hoods, fenders, and tops black, these being the predominating and distinguishing features; that the defendant's two cabs were likewise put upon the streets with yellow bodies, black hoods, fenders and tops, in close simulation and imitation of the cabs of the plaintiff.

That the defendant's cabs, as described above, are in general appearance such an imitation and simulation of those used by the plaintiff company as is calculated and likely to mislead and deceive the general public into believing that the cabs of the defendant are the cabs of the plaintiff company, and rendering it improbable that the casual observer would be able to distinguish the cabs of the respective parties; that the cabs of the respective parties, similarly colored and dressed as they are, can be distinguished only by careful comparison and inspection.

That notwithstanding the fact that the defendant operated his two cabs only two days upon the streets of the city of Asheville before the restraining order in this case was issued, it appears that certain intending patrons of the Yellow Cab Company were actually deceived and led to believe that the cabs of the defendant were the cabs of the plaintiff, to the plaintiff's injury and damage.

That while there are numerous points of slight variation and differences in both the details of structural design and shades of color between the cabs of the plaintiff and defendant, these differences are not sufficient to render the respective cabs distinctive from ordinary observation; that the outstanding distinctive features of the yellow color in combination with black on the cabs of both plaintiff and defendant are so similar as to render the differences and variation insignificant and unnoticeable, the general appearance of both being a yellow cab.

As apposite to these averments it is now the generally accepted position that a manufacturer-dealer or proprietor of a business may adopt and use a name, symbol, or device to designate and identify his wares or business, and when by his care, diligence, and the quality of his goods or services he has acquired and established a patronage and good will of substantial value the same will be protected from unfair competition on the part of a rival, and the cases on the subject are to the effect further that it will be considered unfair competition when such rival adopts for his own business, etc., a sign or symbol in such apparent imitation of the former as will likely mislead his customers and the public as to the identity of the goods sold or service rendered. *United Cigar Stores v. United Confectioners,* 92 N. J. Eq., 449 (reported also in 17 A. S. R., p. 779); *Fisher v. Star Company,* 231 N. Y., 414; *Ball v. Bazaar,* 194 N. Y., 429; *Van Horn v. Coogan,* 52 N. J. Eq., p. 380; *George G. Fox v. Glynn,* 191 Mass., 344; *Walker v. Alley,* 13 Grant's Chancery (App. Cases), p. 366; *Dyment v. Lewis,* 144 Iowa, 509; *Herring-Hall-Marvin Safe Company v. Hall's Safe Company,* 208 U. S., 554; *Weinstock, Lubin & Co. v. Marks,* 109 Cal., 529; 38 Cyc., pp. 756-769, 773; Nims on Unfair Competition, pp. 28-60.

In the case of *Van Horn v. Coogan, supra,* it is held: "That one trader has no right to use a name, a mark, letters, or other *indicia* by

which he may induce purchasers to believe that the goods he is selling are the goods of rival trader."

And speaking generally to the position in the citation to Nims, at page 28, the author says: "Courts will sometimes protect trade names or marks, although not registered or properly selected as trademarks, on the broad ground of enforcing justice and protecting one in the fruits of his toil. 'This is bottomed on the principle of common business integrity, and proceeds on the theory that while the primary and common use of a word or phrase may not be exclusively appropriated, there may be a secondary meaning or construction which will belong to the person who has developed it. In this secondary meaning there may be a property right. A reading of the cases cited above shows that three grounds, at least, for this action have been recognized: (1) The promotion of honesty and fair dealings; (2) the protection of the purchasing public against fraud; (3) the protection of the plaintiff's property right.'"

And coming more directly to the question presented in the record, there are well considered decisions from courts of approved ability and learning extending the principle to the case of taxicabs when a rival operator later in the field has attempted to mislead and divert the patrons of a proprietor and the public by a wrongful imitation of such proprietor's cabs used in an established business wherein color was the principal distinguishing feature. *Taxi and Yellow Operating Co. v. Harry Martin,* 91 N. J. Eq., 233; *Yellow Cab Company v. Harry Becker,* 145 Minn., 152; *Carter v. Carter,* 106 Neb., 531; *Knott v. Morgan* (2 Kenn.), p. 213; 48 Eng. Rep., 610; Nims on Unfair Competition, p. 257.

In the *New Jersey case, supra, Taxi and Yellow Operating Co. v. Martin,* the Court said: "It is unfair trade, for which an injunction will issue, for competitors to paint their taxicabs so that by the ordinary patron they are not distinguished from those of complainant which had earned a patronage and good-will under a peculiar and distinctive painting of its cabs, the predominant feature being a conspicuous yellow body. (2) The defendants are barred by their intentional fraud of the plea of common property in color."

And in the *Minnesota case, supra, Cab Company v. Becker:* "A simulation by defendant of plaintiff's taxicabs, used in a public taxicab business will be enjoined *pendente lite* where the imitation is obviously calculated to deceive the public into the belief that the defendant's taxicabs and service are those of the plaintiff, and thereby injure and interfere with its business."

And it may be further observed that while unfairness and fraud is the basis of the action, it is not always required that there should be a malicious purpose to injure, but the question may be determined on the presumption that "every one must be understood to have intended to do

and abide by that which is the natural and probable conduct of his own act deliberately done." On the part of the defendant there are affidavits in denial of much that is alleged by plaintiff, and, in addition, it is presented that defendant, in the use of the yellow cabs, had no design or purpose to divert plaintiff's patronage, but that on carefully looking into the matter, he became convinced, for various reasons given in his supporting affidavits, that yellow was the better color, and that he ascertained further that these yellow cabs were very generally used for hire in all the prominent cities of the United States, so much so that the yellow color had become the distinctive mark of cabs for hire, and for that reason he had adopted and intended to use them in the future. And he contends further that yellow being one of the common colors, may not be appropriated by any one as a proprietary symbol of his trade or business, and numerous authorities are cited in support of this position. An examination of these, however, will disclose that they were principally questions of interference with statutory trademarks, wherein the plaintiff was insisting on the *exclusive* right to the use of a common color, or of a primary name indicative of location or quality of goods, and in which every one, as a general rule, has a right to share, as in *Watch Co. v. Watch Co.,* 179 U. S., 665; *Canal Co. v. Clark,* 80 U. S., 311; *Lawrence v. Mfg. Co.,* 138 U. S., 537; *Goodyear v. Goodyear,* 128 U. S., 598. Or they are cases where on the hearing it was found as a fact that the rival goods had been adequately distinguished, as in *Coats v. Merrick Thread Co.,* 149 U. S., 562; *Blackwell v. Wright,* 73 N. C., 310, a case in which it appears was concerning the validity of a trademark.

In *Tise v. Whitaker,* 144 N. C., 508-510, it is given as the proper deduction from the cases on the subject: "That in an action, the main purpose of which is to obtain a permanent injunction, if the evidence raises a serious question as to the existence of facts which make for plaintiff's right and are sufficient to establish it, a preliminary restraining order should be continued to the hearing."

And considering the record in deference to this recognized principle, and in view of the opposing statements and positions presented, we are of opinion that the restraining order, in the instant case, should be continued to the hearing. As the cause goes back for an ultimate finding on the determinative facts, we do not deem it wise to refer in detail to numerous suggestions made on the evidence in behalf of either of the parties, and will only say that there is assuredly serious question as to a wrongful interference with plaintiff's rights, and that matters should be kept in the position that prevailed when the preliminary order was issued, and as affected by it, until the final hearing. This will be certified that on giving adequate bond the preliminary restraining order be

continued and the case tried on appropriate issues as to the existence of the rights claimed by plaintiff, and on the question whether the defendant in the user of yellow cabs has so distinguished them that plaintiff's patrons and the public generally are not likely to be misled under such observations as ordinarily prevail with the public in selecting this character of service.

Reversed.