(101 South. 216)

No. 26273.

## YELLOW CAB CO. OF NEW ORLEANS, Inc., v. JONES.

(July 8, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Trade-marks and trade-names and unfair competition** ⬤⇒93(3)—**Evidence held to establish public misled by defendant's use of yellow cab.**

Evidence *held* to establish that public was deceived by defendant's use of a yellow cab into believing it was employing cab belonging to Yellow Cab Company.

2. **Trade-marks and trade-names and unfair competition** ⬤⇒70(1) — **Differences not destroying general similarity not defense.**

Differences which do not destroy general similarity of appearances to ordinary purchaser or user do not constitute valid defense in action to enjoin unfair competition.

3. **Trade-marks and trade-names and unfair competition** ⬤⇒69—**Malicious purpose to injure need not be shown to warrant relief.**

Unfairness and fraud is basis of action to enjoin unfair competition, and it is unnecessary to establish malicious purpose to injure.

4. **Trade-marks and trade-names and unfair competition** ⬤⇒70(1)—**Cab company held entitled to enjoin use of yellow cab by another.**

Yellow Cab Company of New Orleans *held* entitled to enjoin use by defendant of cab painted yellow and black in manner to deceive public.

---

Appeal from Civil District Court, Parish of Orleans; Percy Saint, Judge.

Action by the Yellow Cab Company of New Orleans, Inc., against W. D. Jones. Judgment for plaintiff, and defendant appeals. Affirmed.

Woodville & Woodville, of New Orleans, for appellant.

John P. Sullivan, David Sessler, and P. M. Milner, all of New Orleans, for appellee.

By Division A, composed of O'NIELL, C. J., and ROGERS and BRUNOT, JJ.

ROGERS, J. Plaintiff instituted this suit to enjoin and prohibit defendant from operating a yellow cab for the purpose of unfair trade competition. Upon plaintiff's application, a preliminary injunction was issued. After defendant filed his answer, which contained a reconventional demand for damages in the sum of $300 for attorney's fees and loss of time, the case was heard on its merits, and judgment was rendered in favor of plaintiff perpetuating the injunction and dismissing defendant's reconventional demand. Defendant then appealed.

The only question at issue is whether or not defendant was guilty of unfair competition and misled the public into believing that his cab was one of the cabs of plaintiff.

The plaintiff company was organized to engage in the taxicab business, and particular-

ly to operate yellow taxicabs, in the city of New Orleans. It began to use the so-called yellow cabs about the middle of September, 1920. At that time no yellow taxicabs were being operated on the streets of New Orleans. Prior thereto one Frank Alessi had in service, for a short period, four or five yellow Ford cars, which he used at the Monteleone Hotel. He conducted this business under the name of the "Yellow Taxicab Service."

In July, 1920, Alessi gave up the taxicab business, and the use of the yellow Ford cars was thereafter discontinued; his successor operating Maxwell cars painted black.

The cabs operated by the plaintiff company have a distinctive design and style, consisting chiefly of a cab body, the lower and larger portion of which is painted yellow, the upper part black; the doors are yellow with black trimmings around the edges; the wheel spokes and wheel discs are yellow; the hubs of the wheels, the hoods and the fenders are black. The words "Yellow Cab Company" are painted in large black letters on the side doors, with the telephone number of the company thereon, namely, "Main 3." The chauffeurs wear caps encircled by yellow bands, with the name "Yellow Cab Company" appearing on the front of the cap.

From the inception of its business, the plaintiff company engaged in an extensive advertising campaign, with the object of directing the attention of the general public to its service and its rates, as well as the color of its cabs and its name to correspond. As a result of these efforts, and because it furnished efficient service at reasonable rates, plaintiff built up, and now owns, a large, lucrative, and identified business in public taxicab service, with an increasing and satisfied clientele. It began business with 11 yellow cabs, and now operates 66 of such cabs. The cabs cost $3,000 each, and represent an investment of $198,000.

In the summer of 1921, defendant began to operate a Dodge taxicab, the body of which was painted yellow and the top, hood, and fenders of which were painted black. The driver of this vehicle wore a chauffeur's cap encircled by a yellow band. Defendant used this taxicab on the streets of New Orleans, seeking the patronage of the public, until the preliminary injunction was issued against him in this proceeding. The day after the injunction was served, defendant painted his car black, and, later on, repainted it a gray or ivory color.

It is plaintiff's contention that defendant's yellow cab was an intentional and close imitation and simulation of the yellow cabs owned and operated by it, and that said cab was calculated to, and did actually, deceive the patrons of plaintiff and the public in general; that the operation of said cab by defendant was a fraudulent plan adopted by him for the purpose of deceiving the public, and to divert from plaintiff its patronage.

Defendant denied plaintiff's allegations of fraud and diversion of business. He averred that plaintiff had no proprietary right or title in and to the color of yellow, which was common property and could be used by any one. He alleged that plaintiff's cabs are of a different make, size, and appearance generally from defendant's cab and could never be mistaken therefor. He set up, finally, that it was plaintiff's purpose in adopting said color to monopolize the taxicab business of the city of New Orleans.

[1] It is idle to contend that the cab of defendant did not tend to deceive the patrons of plaintiff and the public generally, in the face of the uncontroverted testimony of three apparently disinterested witnesses, Victor J. Passera, a real estate agent, Dexter Williams and M. V. Howland, insurance brokers, all and each of whom knew and had used the yellow cab service of the plaintiff company, that they were so deceived.

Mr. Passera testified that he was at the Illinois Central Railroad Company depot, and, being desirous of using a yellow cab of the plaintiff company, he was attracted by the defendant calling out "Yellow! Yellow!" and by the fact that he wore a yellow cap. He only discovered his error on reaching his destination in a discussion which ensued between himself and defendant when he was charged an amount in excess of the usual rate charged by plaintiff for the same service. Messrs. Williams and Howland had a similar experience at the depot of the Louisville & Nashville Railroad Company.

Officer J. W. Dodds, of the New Orleans police force, testified that the cabs were so much alike that on one occasion at the Illinois Central Railroad Company depot he actually put a lady in defendant's cab, mistaking it for a Toye cab (one of plaintiff's cabs).

It is not strange that these witnesses fell into the error about which they have testified. Colored cuts of the taxicabs of both parties are in evidence, and it is apparent therefrom that in color and general appearance they are so similar when viewed from a short distance as to give out the impression of belonging to one and the same class.

[2] In trade cases, it is the uniform rule that differences which do not destroy the general similarity of appearances to the ordinary purchaser or user are of no consequence and do not constitute a valid defense. It is sufficient if the resemblance or imitation be of a salient identifying feature in name, label, dress, and design. Yellow Taxi Operating Co. v. Martin, 91 N. J. Eq. 233, 108 Atl. 763; Yellow Cab Co. v. Creasman, 185 N. C. 551, 117 S. E. 787, 28 A. L. R. 109; Johnson & Johnson v. Bauer & Black, 82 Fed. 662, 27 C. C. A. 374; Moxie

Co. v. Daoust, 206 Fed. 434, 124 C. C. A. 316; Yellow Cab Co. v. Becker, 145 Minn. 152, 176 N. W. 345; Yellow Cab Co. v. Nilsen, 221 Ill. App. 658; Yellow Cab Co. v. Abramoff, 215 Ill. App. 644; B. & W. Cab Co. v. Aronson, 184 App. Div. 894, 170 N. Y. Supp. 1069.

[3] While unfairness and fraud is the basis of the action, it is not always required that there should be a malicious purpose to injure, but the question may be determined on the presumption that every person must be understood to have intended to do and abide by that which is the natural and probable conduct of his own act deliberately done. Undoubtedly the resemblance and similarity between the cab of defendant and the cabs of the plaintiff company tended to deceive the public into the belief that the taxicab of defendant was one of plaintiff's taxicabs. In three known instances the public was misled, and to permit defendant to continue to operate his cab would lead to further confusion and injury to plaintiff's business.

[4] It is true, as a general proposition of law, that there is no exclusive property in color. That, however, is not the present issue. The question to be determined here is: Has the plaintiff company so far established a trade-name in the words "Yellow Cab," "Yellow Cab Company," and the colors, style, design, form, and dress as they are combined and used on its taxicabs to invoke the equitable process of injunction to protect it against resemblances and imitations designed and tending to deceive and mislead the public and to deprive plaintiff of the profits of its business? We think it has. See Taxi Operating Co. v. Martin, cited supra, and authorities cited; New England Awl Co. v. Marlborough Awl Co., 168 Mass. 154, 46 N. E. 386, 60 Am. St. Rep. 377.

Judgment affirmed.