**CLIFTON MFG. CO. v. CRAWFORD–AUSTIN MFG. CO. (No. 710.)**

Court of Civil Appeals of Texas. Waco. Jan. 3, 1929.

Sleeper, Boynton & Kendall and Nat Harris, all of Waco, for appellants.

Spell, Naman & Penland, of Waco, for appellee.

GALLAGHER, C. J. This suit was instituted by Crawford-Austin Mfg. Company, a corporation, appellee herein, against Clifton Manufacturing Company, a partnership composed of A. T. Clifton and W. R. Clifton, appellants herein, to enjoin appellants from continuing to manufacture and sell tents, tarpaulins, and wagon covers of the distinctive russet or reddish brown color used by appellee in the manufacture and sale of such articles, and for damages resulting from the manufacture and sale of such articles by appellants prior to the filing of this suit in the sum of $50,000. Appellants and appellee are both large manufacturers of said articles, and sell them in approximately the same trade territory. Prior to June, 1926, appellee was engaged in manufacturing and selling canvas tents, tarpaulins, and wagon covers. Its factory was, and is still, located at Waco, Tex. The canvas used by it in the manufacture of said articles was first treated with a special waterproofing process. In

the course of such treatment, but not as a functional part thereof, the canvas was colored what is termed in the record a bright yellow or khaki. Appellee stamped on each of the articles so manufactured and sold its registered trade-mark, which consisted of the picture of a duck, with the words "Dux-bak" printed above the same in the form of an arc. Neither appellants nor appellee claim any exclusive rights to the use of said color in the manufacture and sale of such products. Appellants had for many years prior to said time been engaged in the manufacture and sale of such articles. Their factory was, and still is, located at Waco. For about two years prior to June, 1926, appellants used in such manufacture canvas which had been treated by them with a waterproofing process similar to that used by appellee, and, in the course of such treatment, but not as a functional part thereof, the canvas was colored yellow, of substantially the same hue as the canvas waterproofed and used by appellee in the manufacture of its said products. Appellants stamped on each of the articles so manufactured and sold a trademark, consisting of the picture of a duck, with the words "Dry Dux" printed above the same in the form of an arc. The use of said trade-mark was enjoined by appellee as an infringement of its own. Since said injunction appellants have used on their tents, tarpaulins, and wagon covers manufactured out of such bright yellow or khaki colored canvas, a trade-mark consisting of the picture of a seal, with the words "Seal-Tex" printed in connection therewith. They were, at the time of the hearing below, still manufacturing and selling such products in such color and under such trade-mark. The right to continue to do so is not questioned in this case.

Appellee, for the purpose of making its said products more readily distinguishable from like products manufactured by appellants and others, about June, 1926, selected a color which it calls a russet or reddish brown, and, during the process of waterproofing, but not as a functional part thereof, dyed canvas so used such color. After such date appellee continued to manufacture and sell tents, tarpaulins, and wagon covers made of bright yellow or khaki colored canvas, but it called the same "Magic Khaki." Said words were arranged in the form of a trademark, the word "Magic" being printed in large capitals broadly spaced, and the word "Khaki" in small capitals closely spaced immediately below the same. Appellee, at the time of the hearing below, was still manufacturing and selling said products in such color and under such name as a trade-mark. Its right to continue to do so is not questioned in this case. Appellee at said time began to manufacture and sell tents, tarpaulins, and wagon covers made out of said russet or reddish brown colored canvas, and was still doing so at the time of the trial below. On all of said colored products it stamped its regular "Dux-Bak" trade-mark. It advertised the same as superior in quality to its Magic Khaki products, but it did not feature such color in its advertisements, except that in its illustrated price lists its Dux-Bak products were pictured in said color. About April 1, 1928, appellants began coloring canvas during the process of waterproofing, but not as a functional part of such process, substantially the same hue of russet or reddish brown used by appellee. They used the waterproof canvas so colored by them in manufacturing tents, tarpaulins, and wagon covers. They stamped upon each of such articles a trade-mark consisting of a crown, with the words "Rex-All" printed above in the form of an arc. In all illustrated price lists issued by them they pictured said Rex-All products in said specific russet or reddish brown color. They also advertised such products as inferior in quality to their yellow Seal-Tex products. Appellee, in a suit in the federal court, enjoined appellants from using said trade-mark, on the ground that it was a colorable imitation and infringement of their own Dux-Bak trade-mark. Appellants thereafter continued to manufacture and sell such articles made out of waterproof russet or reddish brown canvas, and stamped thereon the trade-name "Rain-Tite." Appellee then brought this suit to enjoin and restrain appellants from using waterproof canvas of said specific russet or reddish brown color in the manufacture of such articles.

As grounds for such relief, appellee alleged, in substance, that, for the purpose of making its products more distinctive, it selected, and was the first to adopt and use, such specific russet or reddish brown color; that it was at the time, and had continued to be, the only manufacturer of such products using such color; that it had built up an extensive trade in such products; that the same had become identified in the public mind with such distinctive color, so that persons desiring to purchase from local dealers such articles of its manufacture frequently called for the same by such color. Appellee further alleged that appellants knew the large demand for, and use of, such products manufactured and sold by it in said distinctive color; that appellants, with the intent and purpose of counterfeiting appellee's said products and confusing the buying public and inducing the belief that the products manufactured by them were in truth and in fact products manufactured and sold by appellee, and thus fraudulently securing for themselves the benefits of the popularity of its said products and the large demand therefor, began on or about April 1, 1928, to manufacture and sell tents, tarpaulins, and wagon covers in exactly the same distinctive color so first adopted and continuously and extensively used by appellee in its manufacture of such

products, and that such acts on the part of appellants constituted unfair competition.

Appellee further alleged that purchasers of said such specific products had been in fact confused and deceived into buying articles of such color so manufactured and sold by appellants, as and for similar articles manufactured and sold by appellee, solely by reason of the use by appellants of said distinctive color; that said articles so manufactured and sold in said distinctive color by appellants were greatly inferior in quality to such articles so manufactured and sold in such color by appellee, and that the reputation and good will established for appellee's said products were being greatly injured and would probably be ultimately destroyed by the acts of appellants so complained of.

Appellee prayed for the immediate issuance of a temporary injunction, restraining appellants from using said distinctive color in manufacturing such articles. There was a preliminary hearing before the court on June 30, 1928, upon which hearing the court entered an order enjoining appellants, their servants, agents, and employees, from manufacturing and selling, and from advertising and offering for sale, tents, tarpaulins, and wagon covers of the same reddish brown color, or of substantially the same reddish brown color as that adopted and then used by appellee on such articles manufactured and sold by it under the mark "Dux-Bak," until further orders of said court at its next regular term, beginning on the first Monday in September, 1928. Appellee gave the bond required, and said order thereby became effective. Said action of the court is here presented for review.

### Opinion.

The principal contention urged by appellants is that color alone, when not associated with some other color or with some sign, symbol, or design, cannot be monopolized. They further contend in this connection that when products of a particular kind, formerly manufactured and sold by one manufacturer exclusively in a particular color, are subsequently manufactured and sold by another manufacturer in the same specific color, but are plainly marked as the products of such subsequent manufacturer, the first user of such color for such specific products has no legal ground for complaint. Appellee concedes that, in a broad sense, appellants' first contention is correct. Appellee contends, however, that it was the first to adopt such distinctive color for use in manufacturing and selling the particular products here involved; that such color was wholly arbitrary and nonfunctional; that its said products had become identified with such color in the minds of the buying public; that said color had thereby acquired in connection with appellee's said products a special or secondary meaning;

that its said products were frequently called for by buyers by such color alone; that appellants adopted the precise color so used by appellee and used it in the manufacture and sale of the same kind of products; that they intended thereby to facilitate and procure the sale of their products as the products of appellee; that such products were generally offered for sale at retail without coverings or containers; that, when so offered for sale, appellants' trade-name as stamped thereon was more or less concealed by the manner of folding or stacking, and so inconspicuous, as to be ineffective to advise a purchaser desiring to purchase appellee's products, that he, though buying products of the same color and appearance as appellee's, was in fact buying the alleged inferior products of appellants; that dealers were thus enabled to sell, and were in fact actually selling, appellants' products as the products of appellee; and that it has a right to be protected from the injury to the reputation and sale of its products arising from such competition.

The use of a particular color as a means of identification in the manufacture and sale of goods is governed by the same rule as the use of geographical names in the same connection. The right of the first user to restrain the appropriation and use by a subsequent user of the name of the city in which they both manufactured and sold the same or similar products was before the Supreme Court of the United States in Elgin National Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 21 S. Ct. 271, 45 L. Ed. 365. The factories of both the appellant and appellees in that case were located in Elgin, Ill. We quote from the opinion in that case (pages 273, 274 [179 U. S. 673]) as follows:

"The word 'Elgin' is and has been for very many years the name of a well-known manufacturing city in Illinois. The factory and business of appellees were located at Elgin, and in describing their watch cases as made there it is not denied that they told the literal truth so far as that fact was concerned, and this they were entitled to do according to the general rule. Obviously, to hold that appellant had obtained the exclusive right to use the name 'Elgin' would be to disregard the doctrine characterized by Mr. Justice Strong in Delaware & H. Canal Co. v. Clark [13 Wall. 311, 20 L. Ed. 581], as sound doctrine, 'that no one can apply the name of a district of country to a well-known article of commerce, and obtain thereby such an exclusive right to the application as to prevent others inhabiting the district or dealing in similar articles coming from the district from truthfully using the same designation.'

"But it is contended that the name 'Elgin' had acquired a secondary signification in connection with its use by appellant, and should not, for that reason, be considered or treated

as merely a geographical name. It is undoubtedly true that where such a secondary signification has been acquired, its use in that sense will be protected by restraining the use of the word by others in such a way as to amount to a fraud on the public, and on those to whose employment of it the special meaning has become attached.

"In other words, the manufacturer of particular goods is entitled to the reputation they have acquired, and the public is entitled to the means of distinguishing between those and other goods; and protection is accorded against unfair dealing, whether there be a technical trademark or not. The essence of the wrong consists in the sale of the goods of one manufacturer or vendor for those of another.

"If a plaintiff has the absolute right to the use of a particular word or words as a trademark, then, if an infringement is shown, the wrongful or fraudulent intent is presumed, and although allowed to be rebutted in exemption of damages, the further violation of the right of property will nevertheless be restrained. But where an alleged trademark is not in itself a good trademark, yet the use of the word has come to denote the particular manufacturer or vendor, relief against unfair competition or perfidious dealing will be awarded by requiring the use of the word by another to be confined to its primary sense by such limitations as will prevent misapprehension on the question of origin. In the latter class of cases such circumstances must be made out as will show wrongful intent in fact, or justify that inference from the inevitable consequences of the act complained of. Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 549, 11 S. Ct. 396, 34 L. Ed. 1004; Coats v. Merrick Thread Co., 149 U. S. 562, 13 S. Ct. 966, 37 L. Ed. 847; Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 S. Ct. 1002, 41 L. Ed. 118."

See, also, Hughes v. Howe Grain & Mercantile Co. (Tex. Civ. App.) 162 S. W. 1187, 1189, and authorities there cited; American Waltham Watch Co. v. U. S. Watch Co., 173 Mass. 85, 53 N. E. 141, 142, 43 L. R. A. 826, 73 Am. St. Rep. 263.

The same rule was applied in favor of the first as against the subsequent user of a specific color by the United States Circuit Court of Appeals for the Sixth Circuit in the case of Coca-Cola Co. v. Gay-Ola Co., 200 F. 720, 724, 725, where there was evidence tending to show a specific intent to facilitate and procure the sale of the goods of the second user as and for the goods of the first. In that case appellant and appellee were both manufacturers of a nonintoxicating drink, of substantially the same color, but in the manufacture of which such color was nonfunctional. We quote from the opinion in that case as follows:

"We rest our conclusion here upon the fact that the color was adopted in part as a means of aiding the contemplated fraud, and that, if its adoption was also in part innocent, there is here a confusion caused by defendant; that the burden is therefore upon defendant to see to it that ultimate fraud does not result from this confusion; and that, so far as defendant cannot safeguard this result, it may not use the color. There is here marked—indeed, close—analogy to the rule * * * which requires an article which is likely to deceive as to its origin to be distinctly tagged with the name of the real producer. Merriam v. Saalfield, supra. It goes without saying that this tag should be in form adapted to reach the notice of the final purchaser.

"As to the bottling part of the output, defendant could apparently provide reasonably efficient means of notice, and so probably prevent deception by seeing to it that all the bottles were stamped and labeled prominently with the name of its product. As to the soda fountain part of the output, we do not at present see how deception could be efficiently prevented, save by giving the product a non-deceptive color, although some other satisfactory means may be brought to the attention of the court below. The defendant should be enjoined from selling Gay-Ola of a color the same as or substantially similar to Coca Cola, unless and in so far as upon settlement of the decree below means may be provided by which the ultimate consumer will be fairly advised that he is not getting complainant's Coca Cola, but is getting something else."

See, also, Samson Cordage Works v. Puritan Cordage Mills (C. C. A.) 211 F. 603 et seq., L. R. A. 1915F, 1107; Hiram Walker & Sons v. Grubman (D. C.) 222 F. 478; Yellow Cab Co. v. Becker, 145 Minn. 152, 176 N. W. 345; Taxi & Yellow Taxi Operating Co. v. Martin, 91 N. J. Eq. 233, 108 A. 763; Yellow Cab Co. v. Creasman, 185 N. C. 551, 117 S. E. 787, 28 A. L. R. 109; Carter Transfer & Storage Co. v. Carter, 106 Neb. 531, 184 N. W. 113; Aultz v. Zucht (Tex. Civ. App.) 209 S. W. 475; United Cigar Stores v. United Confectioners, 92 N. J. Eq. 449, 113 A. 226, 17 A. L. R. 779; Barton v. Rex-Oil Co. (C. C. A.) 2 F.(2d) 402, 40 A. L. R. 424.

The action of the court in granting a temporary injunction necessarily implies tentative findings in favor of the contentions of appellee. Appellants assail the sufficiency of appellee's pleadings to fully raise the issues above discussed, and the sufficiency of the evidence to support some of such implied findings. Appellee may of course amend its pleadings before the final trial and remove all reasonable grounds of complaint, if any, with reference to their sufficiency. The recital of facts hereinbefore made has been confined to those about which there was no substantial dispute. Since this is an appeal from an interlocutory order granting temporary restraint only, and since the

rights of the parties will necessarily be determined on the facts presented at the final trial of the case, we have refrained from discussing conflicts in the evidence and the conclusions and inferences which may be properly drawn from the facts proved.

The testimony discloses that the alleged imitation of appellee's distinctive color in the manufacture by appellants of the articles in question had just begun, and fails to show that appellants were likely to suffer any material injury by being temporarily restrained from manufacturing and selling such articles in such specific color. In view of such situation and the testimony introduced at the hearing, we are not prepared to say that the trial court abused his discretion in granting temporary restraint. Meyer v. Cockcroft (Tex. Civ. App.) 273 S. W. 665, 666, and authorities there cited; Dilworth v. Buchanan (Tex. Civ. App.) 275 S. W. 177, 178; City of Waco v. Grimes (Tex. Civ. App.) 279 S. W. 312, 314. Should appellee, on the trial of the case, secure findings of fact by court or jury establishing its contentions, it will be entitled to a permanent injunction in such terms as will effectually protect its rights as defined by the authorities above cited. In such event, whether russet or reddish brown colored tents, tarpaulins, and wagon covers of substantially the same hue used by appellee, manufactured and sold by appellants, can be so stamped, marked, or labeled that such identity or similarity in color will not be likely to mislead the ordinary ultimate buyer and consumer, and cause him to accept appellants' products as and for the products of appellee, will be primarily a question for the trial court under such pertinent testimony on the subject as the parties may see fit to introduce. See in this connection: Elgin Nat. Watch Co. v. Illinois Watch Case Co., supra; Coca-Cola Co. v. Gay-Ola Co., supra; Id. (C. C. A.) 211 F. 942; Shredded Wheat Co. v. Humphrey Cornell Co. (C. C. A.) 250 F. 960; Charles E. Hires Co. v. Consumers' Co. (C. C. A.) 100 F. 809; Hiram Walker & Sons v. Grubman, supra.

The action of the court in granting a temporary injunction is affirmed.