GERMÁN VÉLEZ POSADA, Plaintiff and Appellant, v. ENRIQUE MÁRQUEZ, Defendant and Appellee.

No. 9246. Argued March 5, 1946.—Decided April 26, 1946.

Miranda & Miranda Esteve for appellant. B. Sánchez Castaño for appellee.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

The present appeal has been taken from an order of the lower court refusing to issue a preliminary injunction re-

straining the defendant from using on his public service automobile the yellow and black colors which the plaintiff has adopted as a distinctive feature of his own vehicles, and the uniform of his chauffeurs.

The evidence shows that the plaintiff, Germán Vélez Posada, has been operating as owner, since 1942, a taxicab business under the trade name of "De Diego Taxi Cabs," in which he uses twenty motor vehicles of the Chevrolet, Pontiac, and Buick makes, 1940–41 models, for the transportation of passengers for hire within the city of San Juan and its environs and between that city and Río Piedras, and having his principal office at No. 1, De Diego Avenue, Santurce.

The top of those vehicles is painted in canary yellow and the body, including hood, rear (baúl), and fenders, in black, with a circular emblem or sign, eighteen inches in diameter, which appears on the front door and rear (baúl) of the body and which contains the letter "V" painted in red on a yellow background, the figure of a Pegasus, painted in black inside the vertex of said letter and the legends "De Diego Taxi Cabs" and "Telephones 233-S, 555-S.J., and 12-R.P." appearing respectively above and below the "V". Some of the vehicles have the words "De Diego Taxi Cabs" painted in black letters on the windshield and on the rear portion of the body. The chauffeurs employed by the petitioner wear a kaki uniform and a black cap with a vizor of that same color. The plaintiff alleges that he has used the radio, the newspaper, and the baseball and carnival programs in order· to advertise his business having invested the sum of $4,500 in such advertising during the year 1944; that in the radio advertisements whose text is prepared by the petitioner, the yellow and black colors of said automobiles are emphasized; and that the petitioner has on two or three occasions demanded from the defendant that he stop using the yellow and black colors on his automobile and the latter has refused to comply with those demands.

From the evidence it appears that the defendant, Enrique Márquez, owns an automobile of the Plymouth make, which he uses in the transportation of passengers for hire within the city limits of San Juan and Río Piedras, under a certificate of necessity and convenience issued in his favor by the Public Service Commission. The automobile of the defendant was originally painted in black but several months ago he sent it to the same shop where plantiff's automobiles are painted, and caused it to be painted in yellow and black in the following manner: the upper part of the body, that is, the top and the rear (*baúl*) in canary yellow and the remaining portion of the body, including the hood and the fenders in black, using the identical colors with which the vehicles of the plaintiff are decorated. On the front of defendant's automobile there appears a sign reading thus: "De Márquez Taxi Cab," painted in black and silvered letters, with the word "Cab" placed underneath the words "De Márquez," and on the rear glass there appears a sign reading "Enrique Márquez," and below said glass the word "Taxi Cab" painted in blue letters; and on the windshield there are printed the words "De Márquez" in blue letters, and there is affixed a permit issued in favor of the defendant authorizing him to enter the naval base at Isla Grande. The defendant drives his own automobile, uses a uniform resembling the one worn by the chauffeurs of the plaintiff, and stations his vehicle at the same parking places used by the petitioner for stationing his, that is, at De Diego Avenue, in front of De Diego Pharmacy, and at Columbus Square in San Juan in front of the U. S. O. Building, where he offers his services to the public.

In his petition for injunction the plaintiff alleged that the acts of the defendant constitute unfair competition carried out through deceiving the public, to the prejudice of the passenger transportation business operated by the plaintiff; that if the writ of injunction sought in order to prevent the defendant from continuing to commit the acts described were refused, the plaintiff would suffer irreparable injury; and,

lastly, that the plaintiff lacked any other remedy in the ordinary course of law.

The appellant maintains that the lower court erred in weighing the evidence and in denying the preliminary injunction prayed for.

The lower court made an inspection of the vehicles involved in order to determine any existing similarity or difference and reached the conclusion that defendant's automobile, although painted in yellow and black as were the vehicles of the plaintiff, could not be confused with any of the latter vehicles by a customer of ordinary intelligence who should exercise or take the customary precautions nor by the public in general, because, apart from the inscriptions or signs and markings used which are distinct, there is notable difference between the vehicles in question, which consists in the shield emblem containing the "V" (for Victory) and the figure of a winged-horse or Pegasus which appears only on the vehicles of the plaintiff, and that the only feature which the competing vehicles have in common is that they are painted in the same colors and almost in the same way.

It is true that there was no proof that the defendant advertised his automobile as belonging to or forming part of the fleet of vehicles operated by the plaintiff; but there was some showing that the defendant made use of wrongful means in order to attract the patrons of the plaintiff, such as approaching them and inducing them to get on his automobile, stationed at the same parking places used by the plaintiff; wearing a uniform similar to that used by the chauffeurs of the latter; and attempting to listen to the telephone calls for taxicab service directed to the business operated by the plaintiff.

The conclusions reached by the lower court and its weighing of the evidence are entirely erroneous. The identity of the colors used by the defendant for painting his automobile and the arrangement of those colors on the top, hood, rear, and fenders of the vehicle can not be regarded as a mere

coincidence but as proof of an intention on the part of the defendant to confuse the public by inducing it to believe that his automobile belongs to and forms part of the business of the plaintiff. If in addition to that color combination we bear in mind that the defendant sought to imitate the name "De Diego Taxi Cabs," adopted by the plaintiff as a trade name, by adding to the surname "Márquez" the word "De" so as to designate his automobile as "De Márquez Taxi Cab"; that the defendant has imitated the uniform used by the chauffeurs who drive the cars belonging to the plaintiff; that the defendant stations his taxicab at the same places where the plaintiff customarily stations his; and, lastly, the practice of intercepting the telephone calls directed to the plaintiff in order to render a service which should have been rendered by the latter, we must reach the unavoidable conclusion that the defendant has committed all those acts intentionally and with the purpose of confusing the public, thereby obtaining through unlawful means benefits which otherwise would belong to the plaintiff.

Where, as in the present case, intentional simulation has been established, any doubt that might arise as to probable confusion should be resolved against the simulator. *Stewarts Sandwiches, Inc.* v. *Seward's Cafeteria, Inc.*, 60 F. (2d) 981; *Lloyd's* v. *Lloyd's Ltd.*, 29 R.P.C. 433, 439.

In numerous cases involving the imitation or color combinations used on taxicabs, it has been held that differences such as those pointed out by the lower court as existing between the vehicles of the plaintiff and the taxicab of the defendant were not sufficient to prevent confusion. *Yellow Cab Co.* v. *Creasman*, 185 N.C. 551, 117 S.E. 787; *Yellow Cab Corp.* v. *Korpick*, 120 Misc. 499, 198 N. Y. S. 864; *Taxi & Y. Taxi Operating Co.* v. *Martin*, 91 N. J. Eq. 233, 108 Atl. 763; *Yellow Cab* v. *Becker*, 145 Minn. 152, 176 N. W. 345; *Black & White Co.* v. *Weir*, 26 Pa. Dist. R. 650 (See 17 A.L.R. 788).

It should be borne in mind that prospective patrons have no opportunity to compare one taxicab with another, and

hence the possibility of confusion can not be determined on the basis of a careful comparison but rather on the impression which either taxicab when standing or running singly produces on the casual observer. And we should remember, as was stated by the court in *London General Omnibus Co.* v. *Felton,* 12 Times L.R. 213 (England), that a taxicab is not always stationary, nor is the patron always in a position enabling him to make a detailed examination of its markings from all sides.

The lower court erred in not granting the injunction prayed for. The order appealed from will be reversed and the case remanded to the lower court with instructions to issue the writ of preliminary injunction sought, in accordance with the law and the prayer of the petition.