Germán Vélez Posada, demandante y apelante, v. Enrique Márquez, demandado y apelado.

Núm. 9246.—*Sometido:* Marzo 5, 1946. *Resuelto:* Abril 26, 1946.

*Miranda & Miranda Esteve,* abogados del apelante; *B. Sánchez Cus-taño,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

El presente recurso de apelación ha sido interpuesto contra la resolución dictada por la corte inferior en este caso rehusando expedir un auto de *injunction* preliminar contra el demandado prohibiéndole continuar usando en su automóvil de servicio público los colores amarillo y negro que el peticionario y apelante tiene como distintivo de los suyos, así como el uniforme de sus chóferes.

Conforme resulta de la prueba, el peticionario, Germán Vélez Posada, es dueño de y explota desde el 1942, un negocio de automóviles de alquiler (Taxi Cabs) conocido por el nombre de "De Diego Taxi Cabs", en el cual emplea veinte vehículos de motor de las marcas "Chevrolet", "Pontiac" y "Buick" modelos 1940–41, para la transportación de pasajeros mediante paga, dentro de la ciudad de San Juan y sus barrios y entre ésta y la ciudad de Río Piedras, teniendo su oficina principal en la Avenida De Diego Núm. 1, de Santurce. Dichos automóviles tienen la capota pintada de color amarillo canario y la caja, incluyendo el bonete, el baúl y los tapalodos, pintados de color negro y en las puertas delanteras y sobre el baúl tienen dibujado un emblema o distintivo que consiste de un círculo de 18 pulgadas de diámetro, fondo amarillo que contiene una "V" roja, un pegaso pintado de negro sobre el vértice de dicha letra y los siguientes letreros: "De Diego Taxi Cabs" en la parte superior de la referida "V" y "Teléfonos 233–S y 555 S. J. y 12 R. P.", en la parte inferior de la misma. Algunos

de estos vehículos tienen pintado el siguiente rótulo sobre el cristal de la parte delantera: "De Diego Taxi Cabs", cuyas letras son negras y otro rótulo sobre la tapa del baúl con la misma inscripción. Los chóferes del peticionario usan uniforme color "kaki" y una gorra color negro con visera del mismo color. Alega el demandante que él ha utilizado el radio, la prensa y programas de juegos de pelota y del Carnaval para anunciar su negocio, habiendo invertido la suma de $4,500 en dichos anuncios durante el año 1944; que en los anuncios que se trasmiten por la radio, cuyo texto es preparado por el peticionario, se hacen resaltar los colores amarillo y negro de dichos automóviles; y que el peticionario ha requerido en dos o tres ocasiones al demandado para que deje de usar en su automóvil los colores amarillo y negro a lo que éste se ha negado.

De acuerdo con la prueba, el demandado Enrique Márquez es dueño de un automóvil marca "Plymouth" que dedica a la transportación de pasajeros mediante paga dentro de San Juan y sus barrios y Río Piedras y sus barrios, a virtud de certificado de necesidad y conveniencia expedídole por la Comisión de Servicio Público. El automóvil del demandado estaba originalmente pintado de negro, pero hace algunos meses lo mandó al mismo taller donde pintan los automóviles del demandante para pintarlo de los colores amarillo y negro en la forma siguiente: De amarillo canario la parte superior de la caja, o sea la capota y el baúl, y el resto de la caja, incluyendo el bonete y los tapalados fueron pintados de negro, usando colores idénticos a los usados en los vehículos del demandante. En la parte del frente del automóvil del demandado hay un letrero con letras azules y plateadas que dice: "De Márquez Taxi Cab", estando la palabra "Cab" colocada debajo de las palabras "De Márquez", y sobre el cristal trasero va un rótulo que dice "Enrique Márquez" y debajo de dicho cristal se lee la palabra "Taxi" pintada con letras azules y, además, sobre el cristal parabrisas está pintada la frase "De Márquez" con

letras azules y adherido el permiso extendido al demandado para entrar a la base naval de Isla Grande. El demandado guía su propio automóvil, usa un uniforme parecido al de los chóferes del demandante, y estaciona su vehículo en los mismos sitios de parada que utiliza el peticionario para estacionar los suyos, o sea en la Avenida De Diego, frente a la Farmacia De Diego y en la Plazuela de Colón, en San Juan, frente al edificio del U.S.O., donde ofrece sus servicios al público.

Alegó el demandante en su solicitud de injunction, que las actuaciones del demandado constituyen una competencia desleal, realizada mediante engaño al público, con perjuicio para el negocio de transportación de pasajeros del demandante; que de negarse la corte a expedir el auto de injunction solicitado para evitar que el demandado siga realizando los actos descritos, el peticionario sufriría daños irreparables; y, por último, que el demandante carece de otro remedio en el curso ordinario de la Ley.

Sostiene el apelante que la corte inferior erró al apreciar la prueba y al declarar sin lugar el injunction preliminar.

La corte inferior practicó un examen ocular de los vehículos de una y otra parte para determinar el parecido o diferencia entre ellos, llegando a la conclusión de que el automóvil del demandado a pesar de estar pintado de amarillo y negro, al igual que los del demandante, no podía ser confundido por uno de éstos por un parroquiano de ordinaria inteligencia que ejercitara y que tomara las precauciones corrientes ni tampoco por el público en general, porque entre uno y otros existe, aparte de sus inscripciones o rótulos y marcas que son distintos, una notable diferencia que consiste en el emblema del escudo con la "V" (de la Victoria) y el caballo alado o pegaso, el cual es usado únicamente en los vehículos del demandante; y que lo único que tienen en común es que uno y otros aparecen pintados con los mismos colores y casi en igual forma.

Es cierto que no se probó que el demandado anunciara su automóvil como perteneciente o formando parte de la flota

de vehículos del demandante, pero sí hubo alguna prueba de que el demandado usaba de medios maliciosos para atraerse los clientes del demandante, tales como el de abordarlos y hacerlos subir a su automóvil estacionado en los sitios de parada de los del demandante; usar un uniforme parecido al que usan los chóferes de éste; y tratar de oír las llamadas telefónicas que se hacen al teléfono de la empresa del demandante para acudir al sitio de la llamada.

Las conclusiones de la corte inferior, así como su apreciación de la evidencia, son enteramente erróneas. La identidad de los colores usados por el demandado para pintar su automóvil y la distribución de dichos colores sobre la capota, el bonete, el baúl y los tapalodos del vehículo no pueden ser considerados como una mera coincidencia y sí como evidencia de la intención por parte del demandado de confundir al público induciéndole a creer que su automóvil pertenece a y forma parte de la empresa del demandante. Si además de esa combinación de colores tomamos en consideración que el demandado trató de imitar el nombre ''De Diego Taxi Cabs'', adoptado por el demandante como *trade name* de su empresa, agregando al apellido ''Márquez'' la palabra ''De'', para llamar a su automóvil ''De Márquez Taxi Cab''; que el demandado ha imitado el uniforme de los chóferes que conducen los carros del demandante; que el demandado estaciona su taxi en los sitios en que el demandante acostumbra estacionar los suyos; y, por último la práctica de interceptar las llamadas telefónicas dirigidas a la empresa del demandante, para acudir a prestar el servicio que debió prestar el demandante, tenemos que llegar a la conclusión inescapable de que el demandado ha realizado todos dichos actos intencionalmente y con el propósito de confundir al público, obteniendo así por medios ilegales ganancia que de otro modo corresponderían al demandante.

Cuando, como en el presente caso, la simulación intencional ha quedado establecida, cualquier duda que pudiera sur-

gir en cuanto a la posibilidad de confusión debe ser resuelta en contra del simulador. *Stewarts Sandwiches, Inc.* v. *Seward's Cafeteria, Inc.*, 60 F.2d 981; *Lloyd's* v. *Lloyds' Ltd.*, 29 R.P.C. 433, 439.

En numerosos casos en los que estaba envuelta la imitación de la combinación de colores de los taxis, se ha resuelto que diferencias tales como las señaladas por la corte inferior entre los taxis del demandante y el del demandado no son suficientes para impedir la confusión. *Yellow Cab Co.* v. *Creasman*, 185 N. C. 551, 117 S. E. 787; *Yellow Cab Corp.* v. *Korpeck*, 120 Misc. 499, 198 N.Y.S. 864; *Taxi & Y. Taxi Operating Co.* v. *Martin*, 91 N. J. Eq. 233, 108 Atl. 763; *Yellow Cab* v. *Becker*, 145 Minn. 152, 176 N. W. 345; *Black & White Co.* v. *Weir*, 26 Pa. Dist. R. 650 (Véase 17 A.L.R. 788).

Debe tenerse en cuenta que los posibles parroquianos no tienen la oportunidad de comparar un taxi con el otro, de lo cual resulta que la posibilidad de confusión no puede ser determinada a base de una cuidadosa comparación, sino más bien por la impresión que uno u otro taxi, parado o corriendo solo, produce al observador casual. Y debemos recordar, como lo hizo constar la Corte en *London General Omnibus Co.* v. *Felton*, 12 Times L. R. 213 (England), que un *taxicab* no está siempre estacionado, ni está siempre el parroquiano en una posición que le permita hacer un estudio minucioso de sus marcas, desde todos los lados.

La corte inferior erró al negarse a dictar el *injunction* solicitado. *La resolución recurrida será revocada y se devolverá el caso a la corte inferior con instrucciones de que proceda a dictar el auto de injunction preliminar solicitado, de acuerdo con la Ley y con la súplica de la petición.*