Ray Lackey Enters., Inc. v. Village Inn Lakeside, Inc., 2015 NCBC 32.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| IREDELL COUNTY | 14 CVS 2599 |

<table>
<tr><td>

RAY LACKEY ENTERPRISES, INC.<br>
d/b/a VILLAGE INN PIZZA PARLOR,<br><br>

Plaintiff,<br><br>

v.<br><br>

VILLAGE INN LAKESIDE, INC., and<br>
VILLAGE INN OF JONESVILLE, INC.,<br><br>

Defendants.

</td><td>

**OPINION & ORDER ON PLAINTIFF'S<br>
MOTION FOR PRELIMINARY<br>
INJUNCTION**

</td></tr>
</table>

{1}    **THIS MATTER** is before the Court upon Plaintiff Ray Lackey Enterprises, Inc. d/b/a Village Inn Pizza Parlor's ("Plaintiff" or "RLE") Motion for Preliminary Injunction ("Motion") in the above-captioned case.

{2}    The Court, having considered Plaintiff's Motion, briefs, affidavits, and other documents and exhibits filed in support of and in opposition to the Motion, and the arguments of counsel at the February 11, 2015 hearing in this matter, enters the following **FINDINGS OF FACT** and **CONCLUSIONS OF LAW**, for the limited purposes of deciding the Motion, as follows:

> *Parker Poe Adams & Bernstein LLP by Michael G. Adams and John David Branson for Plaintiff Ray Lackey Enterprises, Inc. d/b/a Village Inn Pizza Parlor.*
>
> *Moore & Van Allen PLLC by Kathryn G. Cole, and Homesley, Gaines & Dudley, LLP by Edmund L. Gaines and Christina Clodfelter for Defendants Village Inn Lakeside, Inc. and Village Inn of Jonesville, Inc.*

Bledsoe, J.

## FINDINGS OF FACT

### I.

### PROCEDURAL HISTORY

{3}    Plaintiff filed its Verified Complaint ("Complaint") against Defendants Village Inn of Lakeside, Inc. ("Lakeside") and Village Inn of Jonesville, Inc. ("Jonesville") (collectively, "Defendants") on November 26, 2014, alleging claims for

state trademark infringement, unfair and deceptive trade practices, and requesting injunctive relief.

{4} On December 1, 2014, Plaintiff sought designation to the North Carolina Business Court. This case was designated and assigned to the undersigned on December 2, 2014.

{5} On December 17, 2014, Plaintiff filed a Motion for Preliminary Injunction, and the Court held a hearing on the Motion on February 11, 2015. Both parties were represented by counsel at the hearing.

II.

BACKGROUND FACTS

{6} William Ray Lackey, Sr. ("Mr. Lackey") founded the Village Inn Pizza Parlor brand in North Carolina in 1967. (Compl. ¶ 7.) In 1972, Mr. Lackey transferred all Village Inn Pizza Parlor assets to RLE. (Compl. ¶ 7.) Since 1972, RLE has continuously operated a number of wholly owned pizza buffet restaurants (the "RLE Parlors") under the Village Inn Pizza Parlor brand name. (Compl. ¶ 8.)

{7} All of the RLE Parlors have continuously used the same distinctive marks, phrases, and names. (Compl. ¶ 10.) The main identifying marks of the RLE Parlors consist of:

> a. A yellow shield, which contains the words, "village inn pizza parlor" (read from top to bottom). The words "village," "inn," and "parlor" are colored black. The word "pizza" is colored red. It is registered as a North Carolina Trademark, North Carolina Registration Number 021666 (Compl. ¶ 11(a));
>
> b. The phrase "Village Inn Pizza Parlor" which carries North Carolina Registration Number 021738 (Compl. ¶ 11(b)).

{8} In addition to the registered Marks (hereinafter, the "North Carolina Registered Marks"), all RLE Parlors use the phrases "Home Of The Great Pizza Buffet," "Family Owned Business Since 1967," and menu items such as "Kings Ransom" and "Village Inn Special." (Compl. ¶¶ 11–13). These phrases and the North Carolina Registered Marks are hereinafter collectively referred to as "RLE's Marks" or "Plaintiff's Marks."

{9} While RLE continued to operate its wholly owned parlors using RLE's Marks, RLE also provided startup capital for, invested in, and supported six (6) other separately incorporated, affiliated parlors that continue to operate under the Village Inn Pizza Parlor name using RLE's Marks ("Independent Parlors"). (Compl. ¶ 8.) Together, the RLE Parlors and Independent Parlors are hereinafter collectively referred to as the "Village Inn Pizza Parlors."

{10} On November 4, 2014, RLE and the Independent Parlors executed Trademark Licensing Agreements to memorialize the control mechanisms that RLE has continuously exerted over the Independent Parlors ("Trademark Licensing Agreement").[1] (First Martin Aff. ¶ 10, Ex. 3; s*ee* Def.'s Br. Supp. Mot. p. 3 fn. 3.)

i.     Defendants' Infringement of Plaintiff's Marks

{11} Defendants Lakeside and Jonesville are pizza parlors that share common principals and leadership, and are located in the same geographic region as the Village Inn Pizza Parlors. (*See* Compl. ¶¶ 41, 42, 49, 56.) Defendants' principals consist of former RLE employees and officers Elizabeth Miller, Brad Caldwell ("Mr. Caldwell"), Frank Miller, Wanda Haliburton ("Ms. Haliburton"), and Trey Acuff ("Mr. Acuff"). (Elizabeth Miller Aff. ¶ 3–4; Caldwell Aff. ¶ 2; Frank Miller Aff. ¶ 2; Haliburton Aff. ¶ 2; Acuff Aff. ¶ 2.)

{12} Elizabeth Miller was the President of RLE from 2009 until she "was terminated from [RLE] in 2014." (*See* Compl. ¶¶ 14, 17; Elizabeth Miller Aff. ¶ 53.) Mr. Caldwell was employed by RLE from 1976–2014. (Caldwell Aff. ¶ 2.) Frank Miller was employed by RLE from 1995–1999 and 2001–2014. (Frank Miller Aff. ¶ 2.) Ms. Haliburton was an employee of RLE from 1989–2014. (Sec. Haliburton Aff. ¶ 3.)

ii.     Defendant Lakeside

{13} On or about May 22, 2014, Elizabeth Miller incorporated Defendant Lakeside. (Compl. ¶ 19.)

---

[1] The following North Carolina corporations operate restaurants under the Village Inn Pizza Parlor name and have executed Trademark Licensing Agreements with RLE: Village Inn of Bethlehem, Inc., Village Inn of North Wilkesboro, Inc., Village Inn of Morganton, Inc., Village Inn of Mooresville, Inc., Village Inn of Salisbury, Inc., and Village Inn of West Jefferson, LLC.

{14}     On or about May 30, 2014, Elizabeth Miller informed her father, William Ray Lackey, II ("Mr. Lackey, II") that she intended to open a Village Inn Pizza Parlor restaurant independent of any oversight by or connection with RLE. (Lackey, II Aff. ¶ 4.)

{15}     On or about June 6, 2014, RLE served a cease and desist letter ("cease and desist letter") on Defendant Lakeside, demanding that its investors not operate a restaurant with the same name, brand, concept, or within the same territory as the Village Inn Pizza Parlors. (Compl. ¶ 41.) Thereafter, Defendant Lakeside opened for business on or about July 7, 2014. (Compl. ¶ 24.)

{16}     RLE then informed Defendant Lakeside that Defendant Lakeside was infringing on RLE's trademarks, as well as engaging in unfair and deceptive trade practices. (Compl. ¶ 42.) In an effort to resolve the dispute, RLE and Defendant Lakeside attempted, unsuccessfully, to negotiate a Trademark Licensing Agreement. (Compl. ¶ 42.)

{17}     Lakeside has disregarded RLE's cease and desist letter warning that Lakeside is infringing on RLE's Marks, and instead, Lakeside has continued to use RLE's Marks to promote its business. (Pl.'s Br. Supp. Mot. pp. 11–12.) For example, Lakeside's roadside sign is virtually identical to other Village Inn Pizza Parlors' signs, the only modification being a blue "Lakeside" banner below the registered Village Inn Pizza Parlor shield. (Pl.'s Br. Supp. Mot. p. 12; Rebecca Hite ("Ms. Hite") Hite Aff. ¶ 15.) Further, Lakeside was serving consumers in identical pizza boxes and beverage cups until RLE learned of the unauthorized use of its marks and directed US Foods, Inc. ("US Foods") to stop selling the products to Defendant Lakeside. (Thomas Keith Hall ("Mr. Hall") Aff. ¶ 8.)

iii.     Defendant Jonesville

{18}     Defendant Jonesville was formerly incorporated as Village Inn of Conover, Inc. (the "Conover location"), which previously operated as an RLE-affiliated restaurant. (Compl. ¶ 43.) In February 2014, prior to Frank Miller's termination, the Conover location was closed and all of its assets were liquated. (Compl. ¶ 46.)

Thereafter, the Conover location filed a corporate name change to Village Inn of Jonesville. (Compl. ¶ 46.)

{19}    RLE first became aware of Defendant Jonesville's plans to open the Jonesville location without an RLE affiliation on or about October 10, 2014. (*See* Hite Aff. Ex. 1.) On that day, a consumer posted on RLE's Facebook page, "Is Village Inn coming to Jonesville or not????". RLE contends that Elizabeth Miller signed onto RLE's Facebook page to respond, "YES!! We are coming to Jonesville and can't wait!!". (*See* Hite Aff. Ex. 1.)

{20}    Defendant Jonesville has intentionally copied Plaintiff's Marks for use in promoting its business. (*See* Third Aff. Miles Lackey Exs. 1, 2.)

{21}    Village Inn Pizza Parlors' consumers have been actually confused by Defendants' use of RLE's Marks. (*See e.g.,* Hite Aff. Ex. 1.)

{22}    Defendants' principals have signed a lease for a third competing Village Inn Pizza Parlor at 2845 Sugar Hill Road, Marion, North Carolina in December 2014 ("Marion location"). (First Aff. Miles Lackey ¶¶ 4–7, Ex. 1.)

## CONCLUSIONS OF LAW

### III.

### ANALYSIS

{23}    RLE contends that Lakeside and Jonesville are using RLE's Marks without RLE's consent or permission in order "to mislead North Carolina consumers to believe" that Lakeside and Jonesville are "affiliated . . . with [RLE]'s high quality, family oriented restaurant business." (Pl.'s Br. Supp. Mot. p. 1.) In response, Defendants contend that RLE does not have an enforceable interest in RLE's Marks because (1) RLE has allowed the Independent Parlors to use RLE's Marks for years without any express contractual agreements to authorize or control their use, (2) RLE's Marks are not enforceable marks because they were obtained through fraud, and (3) RLE has acquiesced to Defendants' use of RLE's Marks.

    i.   Standard of Review

{24}    A Preliminary Injunction is appropriate when:

(1) . . . a plaintiff is able to show *likelihood* of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless

> the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation.

*Ridge Comty. Investors, Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977) (emphasis in original) (citing *Waff Bros., Inc. v. Bank*, 289 N.C. 198, 221 S.E.2d 273 (1976)). North Carolina courts have held that in assessing the preliminary injunction factors, the trial judge "should engage in a balancing process, weighing potential harm to the plaintiff if the injunction is not issued against the potential harm to the defendant if injunctive relief is granted. In effect, the harm alleged by the plaintiff must satisfy a standard of relative substantiality as well as irreparability." *Williams v. Greene*, 36 N.C. App. 80, 86, 243 S.E.2d 156, 160 (1978).

  ii. <u>Plaintiff's Injunctive Relief</u>

{25} RLE seeks injunctive relief to prevent Defendants from infringing on RLE's Marks. *See* N.C. Gen. Stat. § 80-13 ("Nothing herein shall adversely affect the rights or the enforcement of rights in marks acquired in good faith at any time at common law.") A plaintiff is entitled to a preliminary injunction to protect its trademarks when a subsequent competitor adopts those trademarks in the same geographic area for the purpose of confusing consumers. *See Windsor Jewelers, Inc. v. Windsor Fine Jewelers, LLC*, 2009 NCBC 2 ¶ 65 (N.C. Super. Feb. 16, 2009), http://www.ncbusinesscourt.net/opinions/2009_NCBC_2.pdf ("a trademark is 'protectable' only if the holder of the mark has used (or is likely to use) its mark in the same geographic area in which it seeks to enjoin the junior user") (citing *Lone Star Steakhouse & Saloon v. Alpha of Va., Inc.*, 43 F.3d 922, 931–32 (4th Cir. 1995)).

{26} The North Carolina Trademark Registration Act prohibits the unauthorized use of a North Carolina registered trademark without permission of the registrant:

> Subject to the provisions of G.S. 80-13, any person who shall:
>
> > (1) Use in this State without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a mark registered under this Article in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or

mistake or to deceive as to the source of origin of such goods or services . . . or

(2)  Reproduce, counterfeit, copy or colorably imitate any such mark and apply such reproduction, counterfeit, copy or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used upon or in conjunction with the sale or other distribution in this State of such goods or services;

shall be liable to a civil action by the owner of such registered mark for any or all of the remedies provided in G.S. 80-12, except that under subdivision (2) hereof the registrant shall not be entitled to recover profits or damages or any penalty unless the acts have been committed with knowledge that such mark is intended to be used to cause confusion or mistake or to deceive.

N.C. Gen. Stat. § 80-11.

{27}    To establish infringement under N.C. Gen. Stat. § 80-11, a plaintiff must prove two elements: (1) "that it has a valid, protectable trademark;" and (2) "that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers." *See Windsor Jewelers, Inc.*, 2009 NCBC 2 ¶ 64 (citing *Lone Star*, 43 F.3d at 930).

{28}    Proof of likelihood of confusion creates a presumption of irreparable injury. *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991) (citations omitted); *see Lone Star*, 43 F.3d at 938 ("[I]n the context of a trademark infringement action, a number of Courts have adopted the reasoning that a finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears.") (internal quotation and citations omitted).

{29}    Plaintiff generally bears the burden of demonstrating a likelihood of success on the merits in order to obtain a preliminary injunction.  Here, Plaintiff has provided proof that the North Carolina Registered Marks are registered North Carolina trademarks, and the remaining RLE Marks have been used by Village Inn Pizza Parlors for a number of years, giving Plaintiff recognized common law rights in these marks.  *See* N.C. Gen. Stat. § 80-13.  Thus, Plaintiff has provided ample proof that

RLE's Marks are "valid, protectable trademarks." *See Windsor Jewelers, Inc.*, 2009 NCBC 2 ¶ 64.

{30} Further, RLE has provided ample proof that Defendants have intentionally copied RLE's Marks, which in turn has caused and is likely to continue causing consumer confusion. For example, like all Village Inn Pizza Parlors, "Defendant Lakeside is also a buffet style pizza restaurant. Lakeside prominently displays a picture of founder William Ray Lackey, Sr." (Pl.'s Br. Supp. Mot. p. 12.) One of RLE's Marks (the Village Inn Pizza Parlor logo) "is placed on an approximately 40 foot tall road sign next to the [Lakeside] restaurant, as well as on the front door, the business cards of the officers, Lakeside's Facebook page, and numerous advertising materials to include print media, t-shirts and promotional signage." (Pl.'s Br. Supp. Mot. p. 12) (citing Hite Aff. ¶ 14; Exs. 7, 8, 9, 10.) Lakeside has also adopted and used other RLE Marks: "Home of the Great Pizza Buffet" and "Family owned and operated since 1967." (Compl. ¶¶ 26, 28; Hite Aff. Ex. 9.) Moreover, Lakeside and Jonesville have conveyed confusing messages to North Carolina consumers by holding themselves out as Village Inn Pizza Parlors. (*See* Pl.'s Br. Supp. Mot. pp. 12–13.)

{31} The Court thus finds, based upon the current record, that Defendants' "use of a colorable imitation of [Plaintiff's Marks] is likely to cause confusion among consumers."

{32} Plaintiff has therefore established that there is a likelihood that it will succeed on the merits of its claim for state trademark infringement and be awarded injunctive relief.

iii. Defendants' Three Affirmative Defenses

{33} In response, Defendants do not deny intentionally copying RLE's Marks or that consumers are actually confused. Instead, Defendants argue that RLE does not own "valid, protectable" rights in RLE's Marks.

{34} In support of Defendants' argument, Defendants assert three affirmative defenses: (1) Plaintiff's Marks have been given away through "naked licensing;" (2) Plaintiff's Marks were obtained by fraud; and (3) Plaintiff acquiesced to Defendants' use of Plaintiff's Marks. (Defs.' Ans. pp. 7–8.)

{35}   The assertion of affirmative defenses shifts the burden of proof onto Defendants, *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006) ("the burdens at the preliminary injunction stage track the burdens at trial").   Because the Court finds that Plaintiff has established a likelihood of success on the merits of its state trademark infringement claim, Defendants must prove they enjoy a likelihood of success on the merits of at least one of their asserted affirmative defenses to prevent a preliminary injunction from issuing.

iv.  Naked Licensing

{36}   Defendants contend that Plaintiff has not exercised adequate control over the Independent Parlor's use of Plaintiff's Marks such that Plaintiff's Marks no longer represent the quality and service of Village Inn Pizza Parlors that consumers have come to expect.

{37}   "Naked licensing occurs when a licensor does not exercise adequate control over its licensee's use of a licensed trademark such that the trademark may no longer represent the quality of the product or service the consumer has come to expect." *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, Fn. 1 (9th Cir. 2010) (citing *Barcamerica Int'l USA Trust v. Tyfield Imps., Inc.*, 289 F.3d 589, 595–96 (9th Cir. 2002)).   To demonstrate whether a trademark owner has exercised adequate quality control, courts look to three factors: (1) an express, contractual right to control the licensee's operations; (2) actual control over the licensee's operations through a course of performance; or (3) a justifiable reliance on the licensee for quality control.  *Id.* at 516–19.

{38}   Plaintiff concedes that it had no express, contractual right to control the Independent Parlors prior to November 4, 2014 when it executed the Trademark Licensing Agreements.   However, "[t]he lack of an express contract right to inspect and supervise a licensee's operations is not conclusive evidence of lack of control." *Barcamerica*, 289 F.3d at 596 (citation omitted).   In that instance, the licensor must demonstrate actual control through inspection or supervision.  *See, e.g., id.*; *Stanfield v. Osborne Inds.*, 52 F.3d 867, 871 (10th Cir. 1995) ("The absence of an express contractual right of control does not necessarily result in abandonment of a mark, as

long as the licensor in fact exercised sufficient control over its licensee."). Such inspection or supervision is necessary to ensure that the quality and type of goods and services offered under the marks are consistent and predictable, allowing customers to use the marks as an indicator of what to expect. *See Barcamerica*, 289 F.3d at 598.

{39} Defendants contend the Independent Parlors used their "own discretion to determine the quality and type of food, service, and ambiance offered at that particular restaurant," and that RLE has not exercised any control over the Independent Parlors' "menu items, recipes, specials, pricing, hours, employee uniforms, décor, cleanliness, or signage." (Defs.' Br. Opp. Mot. p. 15.)

{40} In contrast, Plaintiff's evidence tends to show that the RLE Parlors and the Independent Parlors use shared resources, oversight, and policies, and are subject to overlapping management and quality controls. (Compl. ¶¶ 8–9.) For instance, since their inception, each Independent Parlor has continuously used the same common brand, packaging, general appearance, menus, and vendors as the RLE Parlors. (Compl. ¶ 8.) The Independent Parlors have also (i) made significant payments to RLE for "management" and "office expense" fees (Pl.'s Reply Supp. Mot. p. 2); (ii) the Independent Parlors' managers are RLE employees (Pl.'s Br. Supp. Mot. pp. 2–3; First Martin Aff. ¶¶ 7–9); and (iii) the Independent Parlors' managers conduct quality control and oversight of the Village Inn Pizza Parlor brand (Compl. ¶ 9). In addition, RLE (i) uses a corporate "Management Policies Employment Handbook" outlining numerous policies on issues ranging from store management and employee pay, to workers' compensation and daily reports for all Village Inn Pizza Parlors (First Martin Aff. ¶¶ 7–9, Ex. 2); (ii) enforces its corporate policies, as evidenced by "manager meeting" memorandums (William Ray Lackey, II (Mr. Lackey, II) Aff. ¶ 10, Ex. 3); (iii) implements a chain wide "termination list" for all Village Inn Pizza Parlor employees (Lackey, II Aff. ¶¶ 12–13, Ex. 4); and (iv) responds to complaints filed against separately incorporated stores with the North Carolina Employment Commission (Lackey, II Aff. ¶ 13, Ex. 5).

{41} RLE's evidence of significant "management" and "office expense" fees paid to RLE by the Independent Parlors, and the tight-knit and overlapping relationship between the shareholders, officers, and directors of RLE and the shareholders, officers, and directors of the Independent Parlors, demonstrates that RLE had affiliated people in place to provide oversight and direction to the Independent Parlors. Such shared ownership and management exemplifies the "close relationship" that would support a licensor's justifiable reliance on his licensees' ability and desire to maintain adequate quality control.

{42} Based on the evidence of record, the Court concludes that Defendants have not demonstrated by the weight of the evidence that RLE has failed to exercise actual control over the Village Inn Pizza Parlor brand. The evidence of record shows that RLE's course of performance was sufficient to retain control over the quality of RLE's Marks. There also exists evidence that RLE was justified in relying on the Independent Parlors to maintain adequate quality control to protect the reputational quality of RLE's Marks. Therefore, Defendants have not shown a likelihood of success on the merits of their affirmative defense of naked licensing.

v. Fraud

{43} Defendants next argue that RLE's Marks were obtained by fraud. The Court disagrees.

{44} RLE's North Carolina trademark application ("N.C. application") represented to the North Carolina Secretary of State's Office that: (a) to the best of RLE's knowledge; (b) no one has registered; (c) or has the right to use; (d) RLE's North Carolina Registered Marks in North Carolina; (e) either in identical or a confusingly similar form.

{45} Defendants' allegation of fraud rests entirely upon Plaintiff's failed 2010 application for a federal mark with the United States Patent and Trademark Office ("USPTO application"). Defendants argue that knowledge of the failed USPTO application made RLE aware of confusingly similar federally registered marks. Defendants' argument therefore hinges on whether RLE lacked a good faith basis for

declaring that another registrant did not have a right to use a confusingly similar mark in North Carolina.

{46} Defendants have the burden of proof under their affirmative defense of fraud to show that: (1) RLE signed the N.C. application without a good faith basis for stating that a senior user with superior rights did not exist and (2) but for the misrepresentation the application would not or should not have been issued. *Firehouse Rest. Grp., Inc. v. Scurmont LLC,* 2011 U.S. Dist. LEXIS 119610 at \*23– 24 (D.S.C. Oct. 17, 2011) (jury concluded that Firehouse Restaurant Group committed fraud when at the time of registration it was in negotiations with a senior user).

{47} Both of Plaintiff's North Carolina Registered Marks include the complete trade name, "Village Inn Pizza Parlor." It is undisputed that no other entity has the right to use the "Village Inn Pizza Parlor" mark within North Carolina.

{48} Moreover, RLE's USPTO application was prepared by Elizabeth Miller (a principal in both Defendant companies) while she was serving as RLE's president and without the assistance of counsel. The USPTO application contains numerous errors: (1) Elizabeth Miller failed to sign the application, (2) she failed to make the proper disclaimer of "Pizza Parlor," (3) she failed to submit the required specimen, and (4) she failed to claim color as a feature of the mark (which the 2014 N.C. application did). (Defs.' Reply Supp. Mot. 9.) These errors were specifically noted by the USPTO in its decision that the USPTO application was "incomplete." (Defs.' Reply Supp. Mot. 9.)

{49} Elizabeth Miller did not follow up with the USPTO by filing a refusal response to correct the errors or provide arguments to reverse the decision. (Defs.' Reply Supp. Mot. 9.) The USPTO's decision also stated that the "applicant may wish to hire an attorney to assist in prosecuting this application because of the legal technicalities involved." (Defs.' Reply Supp. Mot. 9) (citing Defs.' Ex. 6.) Thus, the USPTO did not foreclose the opportunity to pursue registration of RLE's mark.

{50} In contrast to the USPTO application, RLE hired counsel to prepare the N.C. application. (Defs.' Reply Supp. Mot. 9.) During that process, RLE discovered that the USPTO had a pattern of issuing federal marks to applicants with "Village Inn"

contained within the mark. (Defs.' Reply Supp. Mot. 9.) Thus, the existence of other Village Inn registrations did not make "Village Inn Pizza Parlor" confusingly similar to other Village Inn marks and did not give anyone the right to use "Village Inn Pizza Parlor" in North Carolina. (Defs.' Reply Supp. Mot. 9.)

{51} Based on the evidence of record, the Court concludes that Defendants have failed to meet their burden to show that Plaintiff had no good faith basis for signing the N.C. application, and therefore, fail to show a likelihood of success on the merits of their affirmative defense of fraud.[2]

vi.   <u>Express or Implied Consent</u>

{52} Last, Defendants argue that RLE consented, expressly or impliedly, to Defendants' authority to open Lakeside using RLE's marks.[3] Plaintiff adamantly denies that it consented to granting Defendants this authority.

{53} "Although the doctrines of acquiescence and laches, in the context of trademark law, both connote consent by the owner to an infringing use of his mark, acquiescence implies active consent, while laches implies a merely passive consent." *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 462–63 (4th Cir. 1996) (citations omitted). "An infringement action may be barred by the doctrine of estoppel by acquiescence where the owner of the trademark, by conveying to the defendant through affirmative word or deed, expressly or impliedly consents to the

---

[2] The Court further concludes that even if Defendants were to succeed on their affirmative defense of fraud, thereby canceling RLE's North Carolina Registered Marks, RLE would still retain common law rights to these marks. The North Carolina Supreme Court has held that common law rights, even in generic marks "may nevertheless be used deceptively by a newcomer to the field so as to amount to unfair competition." *Charcoal Steak House of Charlotte, Inc. v. Staley,* 263 N.C. 199, 201, 139 S.E.2d 185, 187 (1964) (citing *Cleveland Opera Co. v. Cleveland Civic Opera Ass'n*, 22 Ohio App. 400, 408, 154 N.E. 352, 354 (1926)). This doctrine was recognized to protect the public from deception. *Id.* In *Charcoal Steak House*, the Court recognized that "equity will always protect a business from unfair competition and the public from imposition." *Id.* (citing *Yellow Cab Co. v. Creasman*, 185 N.C. 551, 117 S.E. 787 (1923)). The Court went on to define unfair competition as: "One person has no right to sell goods as the goods of another, nor to do other business as the business of another, and on proper showing (one) will be restrained from so doing." *Id.* (citation omitted). Therefore, cancellation of RLE's North Carolina Registered Marks would not, in this case, prevent RLE from obtaining injunctive relief against Defendants' intentional, identical copying of RLE's common-law marks in Defendants' attempt to hold themselves out as RLE affiliates.

[3] Defendants have not offered evidence to show that Plaintiff consented to opening the Jonesville location or Marion location, and therefore, may not assert the defenses of acquiescence and laches as to these two entities.

infringement." *Id.* at 462 (citations omitted). "[A] strong showing of a likelihood of confusion can trump even a proven case of acquiescence by the senior user to the junior user's usage." *Id.* at 463 (quotation and citation omitted).

{54}   Defendants offer evidence of alleged oral statements of RLE shareholders, board members, and officers to demonstrate that RLE expressly acquiesced to Defendant's use of RLE's Marks.  However, Defendants' affidavits do not cite or make any reference to the existence of voicemail recordings, transcripts of recordings, or any other documentation to verify the existence of these alleged oral statements. Moreover, the alleged oral statements are ambiguous at best and could also be construed as merely granting Defendants the authority to use RLE's Marks in an affiliated Independent Parlor.  Further, Plaintiff counters Defendants' allegations of express oral acquiescence by providing affidavits from the same individuals that allegedly granted Defendants' consent, disputing that they ever made such oral statements.

{55}   Defendants also aver that RLE impliedly consented to the opening of Defendants' competing restaurants and use of RLE's Marks by contending:

> James Martin, Plaintiff's president, posed for a picture next to Defendants' sign at a cookout celebrating the opening of Village Inn Lakeside. Caldwell Aff. ¶ 15.b. Mr. Martin and his daughter Emily, who is also an employee of Plaintiff, each invested in Village Inn Lakeside, knowing that the restaurant would operate under the Village Inn name. Lackey Miller Aff., ¶ 20. b., c. Rebecca Hite (Plaintiff's vice president) tried to acquire an interest in Village Inn Lakeside. *Id.* ¶ 20.k. Likewise, William R. Lackey, Jr. wished Defendants success with Lakeside, and offered to provide financial assistance and help book music for Village Inn Lakeside. *Id.* ¶ 20.m., n.

(Defs.' Resp. Opp. Mot. 13.)

{56}   However, the doctrine of estoppel by laches is "sparingly applied" in trademark infringement actions where plaintiff seeks only equitable relief, and, "in consideration of the public interest, estoppel by laches may not be invoked to deny injunctive relief if it is apparent that infringing use is likely to cause confusion." *Sara Lee Corp.*, 81 F.3d at 461 (citations omitted). *See also Conan Props., Inc. v. Conans Pizza, Inc.,* 752 F.2d 145, 152 (5th Cir. 1985) ("A finding of laches alone ordinarily

will not bar the plaintiff's request for injunctive relief, although it typically will foreclose a demand for an accounting or damages.") (citations omitted); *see Blood v. Titan Sports, Inc.*, 1997 U.S. Dist. LEXIS 24485 (W.D.N.C. May 13, 1997).

{57}  "In determining whether laches may operate as a defense to an infringement claim, a court should ordinarily consider (1) whether the owner of the trademark knew of the infringing use, (2) whether the owner's delay in challenging the infringement of the mark was inexcusable or unreasonable, and (3) whether the infringing user has been unduly prejudiced by the owner's delay." *Blood*, 1997 U.S. Dist. LEXIS 24485 at *18 (citation omitted).

{58}  In this case, Defendants first informed RLE that they intended to open a wholly independent and unaffiliated Village Inn Pizza Parlor on May 30, 2014. On June 6, 2014, Plaintiff served, through counsel, a cease and desist letter against Defendant Lakeside. On or about July 7, 2014, Lakeside opened for business. Thereafter, Plaintiff attempted, unsuccessfully, to negotiate a Trademark Licensing Agreement with Defendants. On October 8, 2014, after discovering Defendant Lakeside was ordering RLE pizza boxes and beverage cups, RLE directed its supplier, US Foods to stop selling those products to Defendants. US Foods complied with Plaintiff's request. On or about November 20, 2014, RLE learned of Defendants' plan to open Jonesville as a sister store to Lakeside, also without affiliation with RLE. (Hite Aff. ¶ 11). On November 26, 2014, RLE filed the present action against Defendants.

{59}  Given the timeline of events, spanning six (6) months from the time Plaintiff learned of Defendants' intentions to open unaffiliated Village Inn Pizza Parlors using Plaintiff's Marks to the time Plaintiff filed the current lawsuit seeking injunctive relief to prevent Defendants' actions, the Court does not find Plaintiff's delay in seeking injunctive relief to enjoin Defendants' actions inexcusable or unreasonable. Defendants' do not dispute receiving Plaintiff's cease and desist letter before opening Lakeside. The cease and desist letter, along with Plaintiff's unsuccessful attempts to negotiate a Trademark Licensing Agreement with

Defendants, put Defendants on notice that Plaintiff did not consent to Defendants' use of Plaintiff's Marks.

{60} In addition, each of Defendants' allegations of implied consent parallels Plaintiff's contention that it initially expected Defendant Lakeside to be an affiliated Independent Parlor. (Second Martin Aff. ¶¶ 3–10.) Shortly after RLE and Defendant Lakeside failed to negotiate an agreement to this effect and RLE learned of Defendants' intention to open a second competing, unaffiliated restaurant, RLE promptly filed this lawsuit seeking injunctive relief.

{61} Since Defendants knew of Plaintiff's objection to the use of Plaintiff's Marks, Defendants opened the unaffiliated restaurants at their own peril. Based on the current record, the Court concludes that Defendants have failed to meet their burden to show that Plaintiff expressly or impliedly consented to Defendants' use of Plaintiff's Marks, and therefore, Defendants fail to show a likelihood of success on the merits of their affirmative defense of express or implied consent.

IV.

CONCLUSION

{62} Plaintiff's Marks are valid and protectable.

{63} Defendants have infringed and are continuing to infringe on Plaintiff's Marks.

{64} Defendants' infringement on Plaintiff's Marks has caused and is likely to continue causing consumer confusion if not stopped.

{65} Plaintiff has suffered and continues to suffer irreparable harm as a result of Defendants' infringement of Plaintiff's Marks.

{66} Having concluded that Plaintiff has demonstrated a likelihood of success on the merits of its claims for state trademark infringement and injunctive relief, and that Defendants have failed to demonstrate a likelihood of success as to any one of their three affirmative defenses, the Court concludes that Defendants' intentional copying of Plaintiff's Marks with the intent to deceive consumers will cause irreparable injury to RLE's business.

{67} **WHEREFORE**, pending the final resolution of this civil action, and unless and until otherwise ordered by this Court, the Court hereby enters this preliminary injunction **ENJOINING** Defendants, their officers, directors, and employees, and anyone with notice of this Order acting with or on Defendants' behalf (the "Prohibited Parties") from all further efforts to confuse consumers including specifically:

a. The Prohibited Parties shall immediately cease, and until this Order is dissolved, shall refrain from using RLE's North Carolina Registered Marks;

b. The Prohibited Parties shall immediately cease, and until this Order is dissolved, shall refrain from using the words "Village Inn" and/or "Village Inn Pizza Parlor" in the name of Defendants' restaurants or in connection with any advertising or promotion of their restaurants, including but not limited to, any web advertising or purchased Google AdWords;

c. The Prohibited Parties shall immediately cease, and until this Order is dissolved, shall refrain from using a yellow shield emblem with the phrase Village Inn Pizza Parlor in conjunction with Defendants' business;

d. The Prohibited Parties shall immediately cease, and until this Order is dissolved, shall refrain from using deceptively similar advertising including, but not limited to:

   i. Using pizza boxes and beverage cups listing or referring to other Village Inn Pizza Parlor locations;

   ii. Using the phrase "Home Of The Great Pizza Buffet;"

   iii. Using the phrase "Family Owned and Operated Since 1967;"

   iv. Using any phrase or implication that Defendants' restaurant is one of "12 Great Locations;"

   v. Using identical or similar menu item names such as "King's Ransom" and "Village Inn Special;"

   vi. Using any other words, phrases, logos, or other identifying Marks to be identified that are used by Defendants to confuse and mislead consumers;

e. The Prohibited Parties shall immediately cease, and until this Order is dissolved, shall refrain from using deceptive claims in advertising and solicitation including, but not limited to: affirmatively asserting that

Defendants' business originated from, or is affiliated in any manner with Plaintiff;

f. The Prohibited Parties shall remove from their Facebook webpage and all printed and photographic material all references to "Village Inn," "Village Inn Pizza Parlor," and "Ray Lackey."

g. The Prohibited Parties shall remove any signage that contains any of RLE's Marks, and shall destroy or store out of sight any materials that contain any of RLE's Marks, and shall remove from any webpages any use of RLE's Marks in connection with Defendants' businesses, and shall cease any Google AdWord purchases that contain any of RLE's Marks.

{68} Pursuant to the provisions of North Carolina Rule of Civil Procedure Rule 65(c), and as a condition of this Order, Plaintiff shall post security in the amount of $25,000.00 in the form of cash, check, surety bond or other undertaking satisfactory to the Iredell County Clerk of Superior Court on or before April 8, 2015.

{69} **SO ORDERED**, this the 2nd day of April 2015.